DONNA R. MORTON, APPELLANT, V. HUNT TRANSPORTATION, INC., AND AETNA CASUALTY & SURETY COMPANY, APPELLEES.
480 N.W.2d 217

Filed February 21, 1992.    No. S-91-571.

Julie A. Frank, of Frank & Gryva, for appellant.

Patrick B. Donahue, of Cassem, Tierney, Adams, Gotch & Douglas, for appellees.

HASTINGS, C.J., BOSLAUGH, WHITE, CAPORALE, SHANAHAN, GRANT, and FAHRNBRUCH, JJ.

HASTINGS, C.J.

The plaintiff, Donna R. Morton, has appealed from an order of dismissal of her claim by the Nebraska Workers' Compensation Court. She assigns as error (1) the court's failure

to find that her carpal tunnel syndrome was work related, (2) the court's application of a standard of causation which did not distinguish between legal and medical causation, (3) the court's failure to award her temporary total disability benefits and medical expenses, and (4) the court's failure to award permanent partial disability benefits. We affirm.

Findings of fact made by the Workers' Compensation Court have the same force and effect as a jury verdict in a civil case and will not be set aside on appeal unless clearly wrong. In testing the sufficiency of the evidence to support findings of fact, the evidence must be considered in the light most favorable to the successful party. *Miner v. Robertson Home Furnishing,* 239 Neb. 525, 476 N.W.2d 854 (1991). Determination of causation is, ordinarily, a matter for the trier of fact. *Rosemann v. County of Sarpy,* 237 Neb. 252, 466 N.W.2d 59 (1991).

Morton worked for Happy Cab, a subsidiary of Hunt Transportation, Inc., in Omaha. She was employed by Happy Cab for unspecified periods between 1976 and 1979, and continuously from 1981 to January 22, 1990. During all this time she worked as a taxicab dispatcher, and from 1988 until her employment terminated, she was chief dispatcher.

Plaintiff's job required that she take order cards for taxicabs, handwritten by telephone operators on 3- by 5-inch cards, off a conveyor belt or a tabletop. Upon receipt of a card, she time-stamped the order card using a pressure-activated time stamp device. She would then direct a cabdriver by means of radio to the location of the order and would again time-stamp the order card, but on the reverse side. Time-stamping the face of the cards required a wrist motion, and time-stamping the reverse side of the cards required Morton to turn her wrist. She was also required to move magnetic chips representing individual taxicabs on a metal board representing the city of Omaha, in order that she and other dispatchers would be able to track the location of these vehicles.

Morton testified that she worked from 7 a.m. to 5 p.m. each weekday, and from 7 a.m. to 3 p.m. on Saturdays. The evidence showed that Happy Cab handled an average of 500 orders in the 7 a.m. to 3 p.m. shift, with a high on any single day of approximately 900 orders. Morton claimed to have regularly

dispatched more than half the orders processed during the time she was working.

In approximately January 1989, Morton began to have pain and numbness in her hands and arms. These symptoms gradually worsened until in January 1990 they began to wake Morton at night. She would have to run hot water over her hands and take medication to alleviate the symptoms. Time-stamping order cards and "the constant writing" at work "seemed to aggravate" Morton's symptoms. During November and December 1989 and January 1990, however, "almost any movement of [Morton's] hands would make them hurt."

Morton saw Dr. Thomas Ferlic on January 11, 1990, for the pain and numbness in her hands, and he diagnosed Morton as suffering from carpal tunnel syndrome in both wrists. Dr. Ferlic performed carpal tunnel release surgery on Morton's right wrist on January 23, and on her left wrist on March 26. He released her to return to work on May 8, and gave as his opinion that she reached maximum medical recovery on July 16.

The medical testimony given by Dr. Ferlic indicated that he was familiar with Morton's work, which he characterized as requiring her to use a "pegboard" to track taxicab movements. When asked whether, "with a reasonable degree of medical certainty or probability . . . Ms. Morton's work activities caused or aggravated her carpal tunnel problems," he stated, "I can state that they may have aggravated her carpal tunnel, but I can't say with any certainty that they caused her carpal tunnel." Dr. Ferlic also stated that some persons are born predisposed to carpal tunnel syndrome and that Morton's work activities were of a type that "might make [a person predisposed to carpal tunnel syndrome] symptomatic . . . depending on how many times a day that they might do them [and] on the severity of their predisposition." He agreed that Morton's work "could and possibly would aggravate carpal tunnel syndrome" and stated that "anyone with a carpal tunnel may have aggravation of that condition with repetitive use of their wrists, depending how severe the carpal tunnel is or anything of that nature." However, after making these statements, Dr. Ferlic stated, "I cannot determine whether or not this was necessarily the etiology of her [Morton's] carpal tunnel."

The compensation court found that the above-recited evidence "does not preponderate in favor of [Morton] and [Morton's] petition must be dismissed." The court observed, "While a medical expert's testimony need not be couched in the magic words 'reasonable degree of medical certainty or a reasonable probability,' the testimony must be sufficiently definite and certain that a conclusion can be drawn that there was a causal connection between the accident and the disability." The court also stated in its order of dismissal, "As we understand the plaintiff's duties, handling 100 cards per hour (1.67 per minute) does not seem a hectic or breakneck pace." It is from this order that Morton appeals.

Morton's assignments of error combine to present two issues to this court: What is the proper legal standard of causation to be applied, and was the evidence sufficient to support the compensation court's findings and order under that standard? Because we find that the compensation court was not clearly wrong in its findings supporting its order of dismissal, it is unnecessary for us to consider the plaintiff's remaining assignments of error relating to the failure of the compensation court to award benefits.

In *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 532, 476 N.W.2d 854, 860 (1991), "this court enunciated the standard for determining whether an expert's opinion is sufficient to support a workers' compensation claim." The test, which originated in *Welke v. City of Ainsworth*, 179 Neb. 496, 138 N.W.2d 808 (1965), reads that "when a physician's testimony 'gives rise to conflicting inferences of *equal* degree of probability so that the choice between them is a mere matter of conjecture, a compensation award cannot be sustained. . . .' " (Emphasis in original.) *Miner*, 239 Neb. at 532, 476 N.W.2d at 860, quoting *Welke, supra*. Based upon this test, "medical testimony expressed in terms of 'possibility' is not sufficient, though such testimony couched in terms of 'probability' is sufficient." *Miner*, 239 Neb. at 532, 476 N.W.2d at 860. "[T]he sufficiency of the [expert's] opinion is judged in the context of the expert's entire statement." *Miner*, 239 Neb. at 533, 476 N.W.2d at 860.

Morton argues that the test of causation requires separate

consideration of legal and medical causation, citing *Leitz v. Roberts Dairy*, 237 Neb. 235, 465 N.W.2d 601 (1991), for this proposition. However, her attempted application of the rule of *Leitz* is out of context here. In *Leitz*, this court adopted a split test of causation, as Morton urges us to do here, from 1B Arthur Larson, The Law of Workmen's Compensation § 38.83(a) (1987). However, *Leitz*, Larson, and *Rosemann v. County of Sarpy*, 237 Neb. 252, 466 N.W.2d 59 (1991)—the only other case in which this court has applied the split standard plaintiff here urges—all applied the standard in cases where a heart attack is alleged to have arisen out of employment activity. See, *Leitz, supra*; 1B Arthur Larson, The Law of Workmen's Compensation § 38.81 (1991); *Rosemann, supra*. See, also, *Clobes v. Nebraska Boxed Beef*, 238 Neb. 612, 472 N.W.2d 893 (1991) (Fahrnbruch, J., concurring).

This distinction is vital because of the purpose underlying the split standard: The " 'generalized nature' " of heart attack cases " 'makes it difficult factually to attribute the attack to the work.' " 1B Larson, *supra*, § 38.81 at 7-308. By separating legal and medical cause, it is possible to compensate those heart attack victims whose work placed a greater strain on their hearts than would ordinary nonemployment life. *Leitz, supra*.

Carpal tunnel syndrome, on the other hand, shares none of the difficulties of etiology that surround heart attacks. Those cases in which this court first recognized carpal tunnel syndrome as a compensable work-related injury relied on the fact that the use of the hands and wrists by the plaintiffs in those cases constituted "repeated trauma" to their hands and wrists. *Crosby v. American Stores*, 207 Neb. 251, 254, 298 N.W.2d 157, 159 (1980); *Erving v. Tri-Con Industries*, 210 Neb. 339, 314 N.W.2d 253 (1982); *Sandel v. Packaging Co. of America*, 211 Neb. 149, 317 N.W.2d 910 (1982). Injuries stemming from these "repeated traumas" carry with them none of the difficulties of detection of the work-related heart attack. Plaintiff's argument therefore urges an inappropriate standard of causation in this case.

Since issues of causation are issues of fact, *Rosemann v. County of Sarpy*, 237 Neb. 252, 466 N.W.2d 59 (1991), the evidence of causation, taken in the light most favorable to

Happy Cab, must show that the compensation court's findings and order are clearly wrong, see *Miner v. Robertson Home Furnishing*, 239 Neb. 525, 476 N.W.2d 854 (1991). The sole evidence of causation in this case was provided by Dr. Ferlic. When the whole of his testimony is examined as previously set forth in this opinion, the evidence does not support the conclusion that the compensation court was clearly wrong in its finding that Morton failed to prove causation.

Read as a whole, Dr. Ferlic's testimony shows his refusal to give an opinion as to whether Morton's work activities caused her condition. The compensation court correctly observed that this is not a case where the expert physician improvidently chose to omit the "magic words" of causation—Dr. Ferlic here gave no indication at all that Morton's work caused her condition. The medical evidence establishes no more than the possibility that Morton's injuries were caused by her employment, and therefore the compensation court did not err in finding that she had not proved causation.

Morton argues that her case should be treated as one where work activity exacerbated a preexisting condition. She bases this argument on two portions of the record: first, Dr. Ferlic's use of the word "aggravated" in discussing the relationship between Morton's work and her injury, and second, Dr. Ferlic's statement that some persons are genetically predisposed to carpal tunnel syndrome. This argument finds no support either in the record or in law.

Plaintiff's argument seems to rest on the idea that given that her condition was aggravated by work, there must have been some preexisting condition to aggravate. This logic is destroyed if the record does not support the assumption that such aggravation in fact occurred. Again, Dr. Ferlic's testimony is the sole source of evidence on this point. Dr. Ferlic did allude to the aggravation of Morton's carpal tunnel syndrome by her work activity, but his statements in that regard are no less equivocal than his statement that he could not "say with any certainty that [Morton's work activities] caused her carpal tunnel." Dr. Ferlic stated that Morton's job activities "*may* have aggravated her carpal tunnel," that Morton's activities "*[c]ould* aggravate" carpal tunnel syndrome, and that "anyone with a

carpal tunnel *may* have aggravation of that condition with repetitive use of their wrists." (Emphasis supplied.)

The strongest evidence to which Morton can point is Dr. Ferlic's statement "It is safe to say, however, that it is work aggravated, if indeed it is found not to be caused by her work." This statement was, however, prefaced by the statement "The etiology of her [Morton's] carpal tunnel is undetermined at this point." Moreover, Dr. Ferlic later explained these statements to mean that "anyone with a carpal tunnel may have aggravation of that condition with repetitive use of their wrists." The evidence that Morton's work *aggravated* her carpal tunnel syndrome is no more definite and certain than is the evidence that it *caused* her carpal tunnel syndrome.

Furthermore, Morton's preexisting condition argument relies on the assumption that since Dr. Ferlic said that *some* persons are genetically predisposed to carpal tunnel syndrome, *she* must have been predisposed to carpal tunnel syndrome; this predisposition, in turn, was a preexisting condition in her case. However, the record is utterly devoid of any evidence that Morton was among those persons genetically predisposed to this condition.

Moreover, Morton's argument relies on flawed legal logic. As Morton would have it, evidence insufficient to prove causation in the absence of a preexisting condition somehow proves causation if one simply assumes a preexisting condition. While this court has disapproved those previous cases which stated the rule to be that a preexisting condition enhances the workers' compensation plaintiff's burden of proof as to causation, *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990), this court has never stated that proof of a preexisting condition makes proof of causation easier.

Nor does the record support a finding of an occupational disease. An occupational disease is defined as a disease which is due only to causes and conditions which are characteristic of and peculiar to a particular trade, occupation, process, or employment, and it excludes all ordinary diseases of life to which the general public is exposed. *Crosby v. American Stores*, 207 Neb. 251, 298 N.W.2d 157 (1980).

The findings of fact made by the Workers' Compensation Court were not clearly wrong, and its order dismissing plaintiff's petition is affirmed.

AFFIRMED.