COURT OF APPEALS OF VIRGINIA

Present:  Judges Benton, Coleman and Fitzpatrick
Argued at Richmond, Virginia


ALLIED FIBERS and
 TRAVELERS INDEMNITY COMPANY OF ILLINOIS
                                          OPINION BY
v.        Record No. 2862-95-2     JUDGE JAMES W. BENTON, JR.
                                       SEPTEMBER 3, 1996
WALTER R. RHODES, SR.


          FROM THE VIRGINIA WORKERS' COMPENSATION COMMISSION

          S. Vernon Priddy, III (Mary Louise Kramer;
          Jennifer G. Marwitz; Sands, Anderson, Marks &
          Miller, on briefs), for appellants.

          Gerald G. Lutkenhaus for appellee.



     Allied Fibers contends that the Workers' Compensation

Commission erred by awarding Walter R. Rhodes, Sr. partial

disability benefits for permanent hearing loss caused by his

employment.  Allied Fibers asserts that in light of the Supreme

Court's recent decision in The Stenrich Group v. Jemmott, 251 Va.

186, 467 S.E.2d 795 (1996), Rhodes' hearing loss is not a

compensable disease under the Workers' Compensation Act because

it is a gradually incurred injury or a cumulative trauma

condition.  Alternatively, Allied Fibers argues that the claim is

barred by the statute of limitations, that the commission erred

by remanding the case to the deputy commissioner to take

additional evidence on whether Rhodes' hearing loss is a disease,

and that the record does not establish "[b]y clear and convincing

evidence, to a reasonable degree of medical certainty, that

[Rhodes' hearing loss] arose out of and in the course of

employment," as required by Code § 65.2-401.  We do not address

Allied Fibers' alternative claims because the Supreme Court's

decision in Jemmott mandates our holding that gradually incurred

industrial hearing loss is a noncompensable, cumulative trauma

condition or injury.  Accordingly, we reverse the commission's

award and dismiss Rhodes' claim.

In awarding Rhodes benefits, the commission relied upon the

opinions of Dr. Aristides Sismanis, Dr. W. Copely McLean, and Dr.

Fred T. Shaia, all of whom diagnosed Rhodes as suffering from

bilateral sensorineural hearing loss due to noise exposure.

"Sensorineural hearing loss originates in the inner ear" or

cochlea.  Robert A. Dobie, M.D., Medical-Legal Evaluation of

Hearing Loss 29 (1993).  Exposure to noise causes the stereocilia

on the outer hair cells in the cochlea to

> lose their stiffness and hence their ability
> to vibrate in response to sound; this causes
> a reversible hearing loss (temporary
> threshold shift, or TTS).  After repeated
> hazardous exposures, the stereocilia become
> permanently damaged, the hair cell dies, and
> permanent threshold shift (PTS) occurs.  The
> more intense and prolonged the exposures, the
> greater the degree of outer hair cell loss.
> Eventually, inner hair cells and auditory
> nerve fibers will be lost as well.

Id. at 135 (emphasis added) (citations omitted).  Thus, typical

noise-induced hearing loss is a gradually incurred impairment

resulting from cumulative trauma.

> Noise damage to sensorineural hearing belongs
> under the general heading of traumatic injury
> because it is strictly a physical force.
> However, it does not fit the classic
> definition of injury, namely a sudden event

produced by immediate trauma.

Attorney's Textbook of Medicine § 84.65 (Roscoe N. Gray & Louise Gordy, eds., 3d ed., 1995).

In Jemmott, the Supreme Court reiterated that "[a] definition of either 'injury' or 'disease' that is so broad as to encompass any bodily ailment of whatever origin is too broad because it would make unnecessary and meaningless the two categories specifically set forth in the Act." 251 Va. at 194, 467 S.E.2d at 799-800 (quoting Holly Farms v. Yancey, 228 Va. 337, 340-41, 321 S.E.2d 298, 300 (1984)). See also Merillat Indus., Inc. v. Parks, 246 Va. 429, 433, 436 S.E.2d 600, 602 (1993). Consequently, the Court rejected The Sloane-Dorland Annotated Medical-Legal Dictionary definition of disease that we adopted in Piedmont Mfg. Co. v. East, 17 Va. App. 499, 438 S.E.2d 769 (1993), as being too broad. In rejecting a purely medical definition of "disease," the Court noted that the meaning of disease under the Act is a mixed question of law and fact, and that "just because a doctor opines that a particular impairment is a disease does not necessarily make it so." Jemmott, 251 Va. at 198, 467 S.E.2d at 801. The Court further held that "an impairment resulting from cumulative trauma caused by repetitive motion . . . must be classified as an injury, not a disease, and . . . under Merillat, is not compensable." Id. at 198, 467 S.E.2d at 802.

Rhodes contends that the Supreme Court's holding in Jemmott

applies only to cumulative trauma conditions caused by repetitive motion. However, Rhodes "overlooks the fact that the opinion represents a clear refusal 'to broaden the scope of the Act to include job-related impairments arising from repetitive motion or cumulative trauma.'" Id. at 199, 467 S.E.2d at 802 (quoting Merillat, 246 Va. at 433, 436 S.E.2d at 601-02) (emphasis added). The Supreme Court's holding is clear and unequivocal, and leaves no doubt that in Virginia cumulative trauma conditions, regardless of whether they are caused by repetitive motion, are not compensable under the Act.

Both this Court and the commission have long held that hearing loss caused by exposure to noise at work is a compensable disease. See Bader v. Norfolk Redevelopment & Hous. Auth., 10 Va. App. 697, 700, 396 S.E.2d 141, 143 (1990); Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 8-9, 365 S.E.2d 782, 786-87 (1988); Hale v. Clinchfield Coal Co., 59 O.I.C. 112 (1981); Mullins v. Clinchfield Coal Co., 58 O.I.C. 253 (1978); Lee v. Norfolk Gen. Hosp., 57 O.I.C. 226 (1977); Rodahaver v. Allegheny Airlines, 56 O.I.C. 270 (1975). However, when the Supreme Court reversed this Court's decision in Jemmott, it also vacated and remanded to this Court Tara K Coal Co. v. Glenn Collier, Record No. 1327-95-3 (Unpublished, November 21, 1995), in which this Court had held that sensorineural hearing loss was proved to be an occupational disease. Viewed in this context, we conclude that the holding in Jemmott logically leads to the conclusion

- 4 -

that a hearing impairment resulting from cumulative trauma is not a disease under the Act.[1] Therefore, we hold that hearing loss caused by prolonged exposure to noise at work is a noncompensable gradually incurred injury. Accordingly, we reverse the commission's award of benefits and dismiss the claim.

_Reversed and dismissed._

---

[1]As a result of Jemmott, Virginia departs from the course followed by the overwhelming majority of the states in holding that carpal tunnel syndrome (CTS) caused by employment and hearing loss caused by exposure to occupational noise are not compensable. See 4 Arthur Larson, Workmen's Compensation App. B, Table 12A (1995) (occupational hearing loss). See also Addendum to this opinion (listing states that have allowed employees to recover for CTS caused by employment).
    We also note that the Indiana Court of Appeals has held that cumulative trauma conditions, including hearing loss, are not occupational diseases under the Indiana workers' compensation scheme. See Duvall v. ICI Americas, Inc., 621 N.E.2d 1122, 1124–27 (Ind. Ct. App. 1993) (cumulative trauma conditions); Martinez v. Taylor Forge & Pipe Works, 368 N.E.2d 1176, 1179–80 (Ind. Ct. App. 1977) (hearing loss). However, cumulative trauma conditions, such as carpal tunnel syndrome and occupational hearing loss, are compensable under the Indiana Act as injuries because the Indiana courts have interpreted that statutory phrase "injury . . . by accident" to mean accidental injury and, thus, to include gradually incurred injuries. See Evans v. Yankeetown Dock Corp., 491 N.E.2d 969, 973–75 (Ind. 1986); Four Star Fabricators, Inc. v. Barrett, 638 N.E.2d 792, 795 (Ind. Ct. App. 1994); Duvall, 621 N.E.2d at 1126. Ordinarily, these decisions would be significant because "[t]he Virginia Workmen's Compensation Act is based upon the Indiana statute, so . . . the construction placed upon the Indiana law by the courts of that state merits our consideration." Barksdale v. H.O. Engen, Inc., 218 Va. 496, 499, 237 S.E.2d 794, 796 (1977). Nevertheless, although the Virginia definition of "injury" under Code § 65.2–101 employs language nearly identical to that in the Indiana statute, see Ind. Code Ann. § 22–3–2–2(a) (Burns 1992), by court decision gradually incurred injuries are not compensable under the Virginia Act. Morris v. Morris, 238 Va. 578, 589, 385 S.E.2d 858, 865 (1989). We are bound by the Supreme Court's unequivocal rulings. Roane v. Roane, 12 Va. App. 989, 993, 407 S.E.2d 698, 700 (1991).

Coleman, J., concurring.


I agree with the majority that the Supreme Court's holding in The Stenrich Group v. Jemmott, 251 Va. 186, 467 S.E.2d 795 (1996), compels us to hold that sensorineural hearing loss caused by prolonged exposure to noise in the workplace is not a disease. I reach this conclusion, not because hearing loss is inconsistent with a definition of disease that the Supreme Court has set forth, but because Jemmott classifies "job-related impairments arising from repetitive motion or cumulative trauma" as gradually incurred injuries. Id. at 199, 467 S.E.2d at 802 (emphasis added). Accordingly, because occupational hearing loss is consistent with the definition of a gradually incurred injury, it is not a disease, and because gradually incurred injuries that result from cumulative trauma are not compensable under the Act, Walter Rhodes' hearing loss is not compensable even though it arose out of and in the course of his employment. Although I agree with the majority, I write separately to express my concern that even though today's decision is mandated by Supreme Court precedent, it is inconsistent, in my opinion, with the expressed intent of the legislature's 1986 amendment to the Act. Furthermore, the decision is inconsistent with the decisions of the commission and the Court which the legislature did not see fit to change during its 1986 study and revisions.

When the Workers' Compensation Act was first enacted in 1918, "[c]ompensation for disease 'in any form' was excluded

except 'where it result[ed] naturally and unavoidably from [an] accident.'" Jemmott, 251 Va. at 192, 467 S.E.2d at 798. Thus, only diseases that were the consequence of or secondary to an industrial accident were compensable. In 1944, the General Assembly provided a schedule of occupational diseases, and a condition other than an injury by accident was not compensable under the Act unless it was listed in this schedule. See Code § 65.1-47 (repealed 1970); Morris v. Morris, 238 Va. 578, 584, 385 S.E.2d 858, 862 (1989). The legislature abolished the schedule of compensable diseases in 1952, but then reenacted it in 1958. In 1969, a study committee appointed by the General Assembly recommended eliminating the schedule of diseases. Report of the Virginia Advisory Legislative Council, Matters Pertinent to the Industrial Commission of Virginia, Va. H. Doc. No. 17, at 6 (1969). Significantly, the committee's recommendation was based on its finding that the schedule was too restrictive.

> The schedule of occupational diseases as set out in § 65.1-47 attempts to be all-inclusive. However, the only possible effect the schedule can have is to eliminate a disease which may in fact be an occupational disease. . . . The elimination of the schedule insures the most comprehensive coverage of occupational diseases; yet the employer is not prejudiced because the disease must in fact be an occupational disease, arising out of and in the course of employment.

Id. (emphasis added). The General Assembly accepted this recommendation and repealed the schedule of occupational

- 7 -

diseases, replacing it with a statutory scheme for coverage of occupational diseases that has remained essentially unchanged since 1970.  1970 Va. Acts. 470.

Beginning in 1958 and continuing until the legislature eliminated the schedule of occupational diseases in 1970, the schedule included tenosynovitis.[2]  See 1958 Va. Acts 457. Tenosynovitis, like carpal tunnel syndrome, is a type of tendon-sheath disorder and is "usually caused by the constant repetition of stereotype movements."  David F. Tver & Kenneth A. Anderson, Industrial Medicine Desk Reference 282 (1986); see also Lamberson v. Phillips Oldsmobile, Inc., 63 O.I.C. 212, 214 (1984) (finding that CTS is "known as tendinitis or tenosynovitis in the area of the median nerve and the carpal tunnel").  Thus, the schedule of diseases, which was the precursor to the current statutory scheme, was not limited to conditions caused by infectious biological agents or exposure to environmental hazards, but in fact, included a cumulative trauma condition resulting from repetitive motion.  Considering the legislative history which shows that the General Assembly eliminated the schedule of diseases for the expressed purpose of expanding rather than restricting coverage of the Act, the interpretation

---

[2]The General Assembly first enacted an occupational disease schedule in 1944, and this schedule did not include tenosynovitis.  1944 Va. Acts. 77.  In 1952, the legislature repealed the occupational disease schedule.  1952 Va. Acts 565. Six years later, the legislature reenacted the schedule and included tenosynovitis as an occupational disease.  1958 Va. Acts 457.

of Code § 65.2-400 rendered by the Supreme Court in Jemmott and applied by us today is not in accord, in my opinion, with the expressed legislative intent.

Today's holding departs from prior decisions of the commission and this Court, both of which have held that hearing loss from prolonged exposure to noise is a disease, albeit an ordinary disease of life rather than an occupational disease. Prior to the Supreme Court's decision in Western Electric Co. v. Gilliam, 229 Va. 345, 329 S.E.2d 13 (1985), the commission routinely awarded claimants benefits for hearing loss caused by exposure to noise at work. Island Creek Coal Co. v. Breeding, 6 Va. App. 1, 8, 365 S.E.2d 782, 786 (1988); see Hale v. Clinchfield Coal Co., 59 O.I.C. 112 (1981); Mullins v. Clinchfield Coal Co., 58 O.I.C. 253 (1978); Lee v. Norfolk Gen. Hosp., 57 O.I.C. 226 (1977); Rodahaver v. Allegheny Airlines, 56 O.I.C. 270 (1975). In Gilliam, the Supreme Court held that an ordinary disease of life was not compensable under the Act regardless of its causal connection to the claimant's employment. Relying on that decision, we held that hearing loss was a noncompensable ordinary disease of life. See Belcher v. City of Hampton, 1 Va. App. 312, 338 S.E.2d 654 (1986). Soon after Gilliam was decided, however, the General Assembly enacted Code § 65.2-401[3] (formerly Code § 65.1-46.1), which allows claimants

---

[3]Code § 65.2-401. "Ordinary disease of life" coverage.

An ordinary disease of life to which the general public is exposed outside of the

to receive compensation for ordinary diseases of life that are sufficiently connected to their employment.  The legislative intent in enacting Code § 65.2-401 was to restore the law as it existed prior to Gilliam.  Island Creek Coal, 6 Va. App. at 9, 365 S.E.2d at 787; Report of the Joint Subcommittee Studying Workers' Compensation, H. Doc. No. 27, at 8 (1986).  Consequently, we have interpreted Code § 65.2-401 to provide compensation for gradually incurred hearing loss from prolonged noise exposure as an ordinary disease of life.  Bader v. Norfolk Redevelopment & Hous. Auth., 10 Va. App. 697, 700, 396 S.E.2d 141, 143 (1990); Island Creek, 6 Va. App. at 8-9, 365 S.E.2d at 786.  The General Assembly has not acted to reverse this

(..continued)

> employment may be treated as an occupational disease for purposes of this title if it is established by clear and convincing evidence, to a reasonable medical certainty, that it arose out of and in the course of employment as provided in § 65.2-400 with respect to occupational diseases and did not result from causes outside of the employment, and that:
>
> 1. It follows as an incident of occupational disease as defined in this title; or
> 2. It is an infectious or contagious disease contracted in the course of one's employment in a hospital or sanitarium or laboratory or nursing home as defined in § 32.1-123, or while otherwise engaged in the direct delivery of health care, or in the course of employment as emergency rescue personnel and those volunteer emergency rescue personnel referred to in § 65.2-101; or
> 3. It is characteristic of the employment and was caused by conditions peculiar to such employment.

- 10 -

interpretation.  Generally, "[w]e presume that the legislature is cognizant of the interpretation the statute has been given by this Court . . . and of the commission's application of Virginia precedent."[4]  City of Norfolk v. Lillard, 15 Va. App. 424, 430, 424 S.E.2d 243, 247 (1992); see also Peyton v. Williams, 206 Va. 595, 600, 145 S.E.2d 147, 151 (1965).

As the Supreme Court has noted, "[t]he General Assembly created the Workers' Compensation scheme as a carefully balanced societal exchange between the interests of employers, employees, insurers, and the public."  Morris, 238 Va. at 584, 385 S.E.2d at 862.  Today's decision reverses a relatively longstanding practice of both the commission and this Court of awarding benefits for occupational hearing loss, even though the legislature's approval of treating occupational hearing loss as a compensable disease was reflected in its 1986 amendments to the Act, and subsequent acquiescence to this Court's interpretation of those amendments.  In my view, reversal of the award in this case, which I agree is mandated by Jemmott, does not "adhere to the view that it is peculiarly within the province of the General Assembly to adjust the balance of competing interests inevitably

---

[4]It should also be noted that the General Assembly has expressly provided in the Workers' Compensation Act that claimants shall be compensated for permanent total loss of hearing.  Code § 65.2-503(B)(15).  Although Code § 65.2-503 does not indicate whether hearing loss is a disease or an injury, we presume that the legislature was cognizant when it last amended the statute of decisions rendered by this Court and the commission that characterized gradually incurred hearing loss as a disease.

- 11 -

involved when such a fundamental policy change is contemplated."
 Morris, 238 Va. at 588, 385 S.E.2d at 864.  Nevertheless, I am constrained to concur in the majority's holding.

Addendum

Alabama:  Ala. Code § 25-5-1(9) (1975) (injury); Neely Truck Line, Inc. v. Jones, 624 So. 2d 1385, 1386 n.1 (Ala. Civ. App. 1993) (injury).

Alaska:  No decision.

Arizona: No decision.

Arkansas: Sanyo Mfg. Corp. v. Leisure, 675 S.W.2d 841, 842-44 (Ark. Ct. App. 1984) (occupational disease).

California:  Cal. Labor Code § 3208.1 (West 1989) (injury may be "specific or "cumulative"); Ashley v. Workers' Compensation Appeals Bd., 43 Cal. Rptr.2d 589, 590-91 (Cal. Ct. App. 1995) (implies CTS is compensable as an injury).

Colorado:  Delta Drywell v. Industrial Claim Appeals Office, 868 P.2d 1155, 1157-58 (Colo. Ct. App. 1993) (CTS is compensable as either a disease or an injury).

Connecticut:  Erisoty v. Merrow Machine Co., 643 A.2d 898, 899 (Conn. App. Ct. 1994) (implies that CTS is compensable as an injury).

Delaware:  Torres v. Allen Family Foods, 672 A.2d 26, 28-29 (Del. 1995) (implies that CTS is compensable as an injury)

Florida:  Simon Sez, Inc. v. Ferrer, 567 So. 2d 51, 52 (Fla. Dist. Ct. App. 1990) (injury).

Georgia:  Eastern Airlines, Inc. v. Moss, 397 S.E.2d 445, 446 (Ga. Ct. App. 1990) (implies that CTS is compensable as an injury).

Hawaii:  No decision.

Idaho:  Kinney v. Tupperware Co., 792 P.2d 330, 333 (Idaho 1990) (occupational disease).

Illinois:  Peoria County Belwood Nursing Home v. Industrial Comm'n, 505 N.E.2d 1026, 1028 (Ill. 1987) (injury).

Indiana:  Duvall v. ICI Americas, Inc., 621 N.E.2d 1122, 1124-27 (Ind. Ct. App. 1993) (injury).

Iowa:  Noble v. Lamoni Prods., 512 N.W.2d 290, 293-94 (Iowa 1994) (injury).

Kansas:  Berry v. Boeing Military Airplanes, 885 P.2d 1261,

1267-68 (Kan. Ct. App. 1994) (CTS falls somewhere between the definitions of disease and injury, but is compensable nonetheless).

Kentucky:  <u>Brockway v. Rockwell Int'l</u>, 907 S.W.2d 166, 168 (Ky. Ct. App. 1995) (implies that CTS is a compensable injury).

Louisiana:  La. Rev. Stat. Ann. § 23:1031.1(B) (1996); <u>Price v. City of New Orleans</u>, 672 So. 2d 1045, 1049 (La. Ct. App. 1996) (injury).

Maine:  <u>Ross v. Oxford Paper Co.</u>, 363 A.2d 712, 714 (Me. 1976) (injury).

Maryland:  <u>Lettering Unltd. v. Guy</u>, 582 A.2d 996, 998-99 (Md. 1990) (occupational disease).

Massachusetts:  No decision.

Michigan:  <u>Illes v. Jones Transfer Co.</u>, 539 N.W.2d 382, 385-87 (Mich. Ct. App. 1995) (implies that CTS is compensable as an injury).

Minnesota:  <u>Jones v. Thermo King</u>, 461 N.W.2d 915, 916-17 (Minn. 1990) (injury).

Mississippi:  <u>Segar v. Garan, Inc.</u>, 388 So. 2d 164, 165-66 (Miss. 1980) (implies that CTS is a compensable injury).

Missouri:  <u>Weniger v. Pulitzer Pub. Co.</u>, 860 S.W.2d 359, 360 (Mo. Ct. App. 1993) (occupational disease).

Montana:  <u>Bremer v. Buerkle</u>, 727 P.2d 529, 531 (Mont. 1986) (injury).

Nebraska:  <u>Morton v. Hunt Transp., Inc.</u>, 480 N.W.2d 217, 221 (Neb. 1992) (injury).

Nevada:  Nev. Rev. Stat. § 617.450 (1995) (listing tenosynovitis as an occupational disease).

New Hampshire:  <u>In re Gilpatric</u>, 639 A.2d 267, 268-69 (N.H. 1994) (implies that CTS is compensable as an injury).

New Jersey:  <u>In re Musick</u>, 670 A.2d 11, 14-15 (N.J. 1996) (injury).

New Mexico:  <u>Salinas-Kendrick v. Mario Esparza Law Office</u>, 879 P.2d 796, 798 (N.M. Ct. App. 1994) (implies that CTS is an injury).

New York:  Winn v. Hudson Valley Equine Ctr., 626 N.Y.S.2d 578, 579 (N.Y. App. Div. 1995) (occupational disease).

North Carolina:  Seagraves v. The Austin Company of Greensboro, Rec. No. COA95-853, 1996 WL 406457, at *1 (N.C. Ct. App. July 16, 1996) (implies that CTS is compensable as an occupational disease).

North Dakota:  No decision.

Ohio:  Frazier v. Mayfield, 582 N.E.2d 620, 622-23 (Ohio Ct. App. 1989) (occupational disease).

Oklahoma:  Mid-Continent Casualty Co. v. Bradley, 855 P.2d 145, 146 (Okla. Ct. App. 1993) (implies that CTS is an injury).

Oregon:  Sibley v. City of Phoenix, 813 P.2d 69, 71 (Or. Ct. App. 1991) (occupational disease).

Pennsylvania:  Brooks v. Workmen's Compensation Appeal Bd. (Anchor Glass Container), 624 A.2d 821, 822 (Pa. Commw. Ct. 1993) (injury).

Rhode Island:  Vater v. HB Group, 667 A.2d 283, 285-86 (R.I. 1995) (implies that CTS is compensable).

South Carolina:  Rodney v. Michelin Tire Corp., 466 S.E.2d 357, 359 n.1 (S.C. 1996) (holding that it has not been decided whether CTS is compensable, and if so, whether it is compensable as an injury or an occupational disease).

South Dakota:  Schuck v. John Morrell & Co., 529 N.W.2d 894, 899-900 (S.D. 1995) (injury).

Tennessee:  Barker v. Home-Crest Corp., 805 S.W.2d 373, 376 (Tenn. 1991) (injury).

Texas:  Tex. Labor Code Ann. § 401.011(34) (West 1996) (defining occupational disease to include "repetitive trauma injury").

Utah:  Stouffer Foods Corp. v. Industrial Comm'n, 801 P.2d 179, 182-83 (Utah Ct. App. 1990) (implies that CTS is compensable).

Vermont:  No decision.

Washington:  Davis v. Bendix Corp., 917 P.2d 586, 588 (Wash. Ct. App. 1996) (occupational disease).

West Virginia:  Lilly v. State Workmen's Compensation Comm'r, 225 S.E.2d 214, 217-18 (W. Va. 1976) (holding that cumulative trauma conditions qualify as occupational diseases).

Wisconsin:  <u>Brown v. Labor & Industry Rev. Comm'n</u>, Rec. No. 83-878, 1983 WL 161395, at *1-2 (Wis. Ct. App. Dec. 27, 1983) (occupational disease).

Wyoming:  <u>Curnow v. State ex rel. Wyoming Workers' Compensation Div.</u>, 899 P.2d 875, 877-78 (Wyo. 1995) (implies that CTS is compensable as an injury).