LARRY ZESSIN, APPELLEE, V. SHANAHAN MECHANICAL &
ELECTRIC, INC., AND EMPLOYERS MUTUAL COMPANIES,
APPELLANTS.

558 N.W.2d 564

Filed January 31, 1997.   No. S-95-737.

Walter E. Zink II and Allan E. Wallace, of Baylor, Evnen, Curtiss, Grimit & Witt, for appellants.

Joseph E. Andres and Terrence J. Salerno for appellee.

WHITE, C.J., CAPORALE, FAHRNBRUCH, LANPHIER, WRIGHT, CONNOLLY, and GERRARD, JJ.

CONNOLLY, J.

Shanahan Mechanical & Electric, Inc. (Shanahan), and Employers Mutual Companies (Employers) appeal the determination of the Nebraska Workers' Compensation Court that Larry Zessin sustained a work-related injury on June 22, 1992, when he suffered a heart attack while hauling plumbing supplies up scaffolding at Bryan Memorial Hospital in Lincoln, Nebraska. Furthermore, Shanahan and Employers assert that the Workers' Compensation Court erred in admitting certain deposition testimony of Zessin's medical expert to establish causation because the testimony went beyond the scope of Zessin's required disclosure under Workers' Comp. Ct. R. of Proc. 10 (1994). We affirm the judgment of the Workers' Compensation Court.

## FACTUAL BACKGROUND

On June 22, 1992, Zessin was employed by Shanahan as a journeyman plumber. While working on an addition to Bryan Memorial Hospital, Zessin hauled 10-foot lengths of cast iron pipe, weighing up to 80 pounds, up six levels of scaffolding from 7 to 10 a.m. At approximately 10 a.m., he took a 15-minute break. After resuming work, he was found lying unconscious on a scaffold. After paramedics revived Zessin, doctors performed cardiac catheterization, which revealed a 70-percent narrowing of the artery which supplies the left, or anterior, side of the heart and a 99-percent narrowing of the right coronary artery. Zessin was diagnosed as having suffered an acute myocardial infarction, which occurs when circulation to a

region of the heart is obstructed, resulting in the death of cells in the muscular wall of the heart. See Dorland's Illustrated Medical Dictionary 837 (28th ed. 1994). Hospital records indicated that in 1989, while living in Georgia, Zessin had suffered a prior inferior myocardial infarction, involving a different area of the heart.

On July 9, 1992, Zessin underwent coronary bypass surgery and implantation of an automatic implantable cardioverter-defibrillator (AICD). One of the treating cardiologists, Dr. Kyong T. Turk, noted in his surgical report that "[s]ince the patient has multiple history of syncope [fainting caused by loss of blood to the brain] in the past, patient is now undergoing coronary artery bypass graft surgery in addition to implantation of AICD." See Dorland's Illustrated Medical Dictionary at 1622. However, Dr. Turk also noted in a December 15, 1992, letter that "[b]ecause of sudden cardiac death, the patient underwent electrophysiologic evaluation by Dr. Krueger at which time he had an easily-induced ventricular tachycardia [an abnormally rapid heart rhythm]. For the treatment of this, patient underwent implantation of an [AICD] and one-vessel coronary artery bypass graft surgery . . . ." See Dorland's Illustrated Medical Dictionary at 1655.

Based on Zessin's medical reports, Shanahan and Employers assert that Zessin's cardiac arrest was the result of his previous myocardial infarction and ongoing ischemia (deficiency of blood supply to the heart muscle due to obstruction or constriction of the coronary arteries). See Dorland's Illustrated Medical Dictionary at 861. However, Zessin argues that the heavy physical exertion in which he engaged prior to the cardiac arrest, combined with his preexisting condition, was the cause of the myocardial infarction.

In the hearing before the Workers' Compensation Court, Zessin presented the deposition testimony of Dr. John R. Windle, a cardiologist, to establish that the heavy physical exertion in which Zessin engaged caused the heart attack. Shanahan and Employers argue that Dr. Windle's testimony violated Workers' Comp. Ct. R. of Proc. 4 (1994). Specifically, Shanahan and Employers argue that Dr. Windle's testimony was beyond the scope of the opinions expressed in Dr. Windle's rule

report filed on August 31, 1994. The trial court overruled Shanahan and Employers' objection, finding good cause for receipt of the deposition testimony because of the existence of a prior agreement between Shanahan and Employers' and Zessin's counsel.

The trial court relied upon Dr. Windle's deposition testimony to establish that Zessin's injury was caused by the work he was performing. Additionally, the court found that carrying the heavy pipes up scaffolding was a greater physical exertion than that occasioned during nonemployment life; therefore, Zessin's injury arose during the course of his employment. In addition, the court found that all of Zessin's medical expenses should be paid by Shanahan and Employers, including those for the bypass surgery and the implantation of the AICD. Shanahan and Employers applied for review, and the Workers' Compensation Court review panel affirmed the trial court's order.

## ASSIGNMENTS OF ERROR

Shanahan and Employers assign as error that the Workers' Compensation Court erred as a matter of law and was clearly wrong in (1) overruling Shanahan and Employers' objection to those portions of the deposition testimony of Dr. Windle on September 30, 1994, that expressed opinions beyond those contained in his August 31, 1994, report; (2) finding that Zessin suffered an accident or injuries arising out of and in the course and scope of his employment with Shanahan on June 22, 1992; (3) finding that Zessin provided sufficient expert medical evidence to establish a causal relationship between Zessin's cardiac arrest and his employment; and (4) finding that Zessin's medical bills, particularly those for implantation of the AICD and the coronary bypass surgery, were compensable because they arose out of and in the course of his employment with Shanahan.

## STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1993), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment,

order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996); *Hull v. Aetna Ins. Co.*, 249 Neb. 125, 541 N.W.2d 631 (1996); *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996).

Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Cords v. City of Lincoln, supra*; *Scott v. Pepsi Cola Co.*, 249 Neb. 60, 541 N.W.2d 49 (1995).

## ANALYSIS

Shanahan and Employers first assert that the Workers' Compensation Court erred in overruling their objection to portions of the deposition testimony of Dr. Windle that violated rule 4. Specifically, Shanahan and Employers argue that the trial court should have excluded from evidence portions of Dr. Windle's deposition testimony that expressed opinions beyond those contained in his previously submitted written report. Rule 4A(2)(a) states in pertinent part that

each party shall disclose to every other party any evidence that the party may present at trial by or from any witness qualified as an expert.

This disclosure shall be in the form of a written report prepared and signed by the witness which complies with Rule 10.

Shanahan and Employers do not allege that Zessin failed to comply with any of the requirements of rule 10. Rule 10, in addition to setting forth the requirements for written reports, states in pertinent part:

Any party against whom the report may be used shall have the right, at the party's own initial expense, of cross examination of the physician or surgeon . . . either by deposition or by arranging the appearance of the physician or surgeon . . . at the hearing. Nothing in this rule shall prevent deposition or live testimony of the physician or surgeon . . . .

Shanahan and Employers argue that the remedy for introducing deposition testimony that expresses opinions beyond those contained in the written report is the exclusion of that evidence. However, in *Phillips v. Monroe Auto Equip. Co., ante* p. 585, 597, 558 N.W.2d 799, 807 (1997), we concluded that "substantive sanctions regarding discovery and other pretrial procedural matters in the compensation court should be subject to at least the same procedural safeguards as comparable sanctions for alleged discovery and pretrial procedural violations in Nebraska's civil courts." The compensation court does not have the right to establish rules of evidence, procedure, or discovery that are "more restrictive or onerous than [the rules applicable to] the trial courts in this state." *Id.* at 596, 558 N.W.2d at 806.

Under the discovery rules of this state, the remedy for introducing deposition testimony that is beyond that previously discovered, via interrogatories or otherwise, is not the exclusion of the additional testimony. Thus, even if we were to assume arguendo that Shanahan and Employers are correct in their assertion that a rule 4 violation has occurred, the compensation court does not have the right to adopt the exclusion of evidence as a remedy, because such rule would be more onerous than the rules applicable to the trial courts of this state. As a result, we conclude that Shanahan and Employers' claim that the Workers' Compensation Court erred by admitting the deposition testimony of Dr. Windle is meritless.

We will consider two of Shanahan and Employers' remaining assigned errors together. First, Shanahan and Employers contend that the court erred as a matter of law and was clearly wrong in finding that Zessin's injury arose out of and in the course and scope of his employment with Shanahan. Second, Shanahan and Employers argue that Zessin introduced insufficient medical evidence to establish causation.

In evaluating the determinations of the Workers' Compensation Court, we must be guided by our statutory standard of review provided in § 48-185. Pursuant to § 48-185, an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment,

order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Cords v. City of Lincoln*, 249 Neb. 748, 545 N.W.2d 112 (1996); *Hull v. Aetna Ins. Co.*, 249 Neb. 125, 541 N.W.2d 631 (1996); *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996).

When a workers' compensation claimant has suffered a heart attack, the foremost and essential problem is causation, that is, whether the employment caused an employee's injury or death from a heart attack. *Rosemann v. County of Sarpy*, 237 Neb. 252, 466 N.W.2d 59 (1991). See, also, *Toombs v. Driver Mgmt., Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1995). The issue in regard to causation of an injury or disability is one for determination by the fact finder, whose findings will not be set aside unless clearly erroneous. *Cox v. Fagen Inc.*, 249 Neb. 677, 545 N.W.2d 80 (1996); *Leitz v. Roberts Dairy*, 237 Neb. 235, 465 N.W.2d 601 (1991).

In workers' compensation cases, the heart injury causation issue consists of two elements: (1) legal causation and (2) medical causation. *Toombs v. Driver Mgmt., Inc., supra; Leitz v. Roberts Dairy, supra.* Under the legal test, the law must define what kind of exertion satisfies the test of "arising out of the employment." *Id.* Under the medical test, the doctors must say whether the exertion (having been held legally sufficient to support compensation) in fact caused the collapse. *Id.* See, also, 1A Arthur Larson & Lex K. Larson, The Law of Workmen's Compensation § 38.83(a) (1996).

## LEGAL CAUSATION

When a preexisting disease or condition is present, this court has adopted the following test for legal causation: An exertion- or stress-caused heart injury to which the claimant's preexisting heart disease or condition contributes is compensable only if the claimant shows that the exertion or stress encountered during employment is greater than that experienced during the ordinary nonemployment life of the employee or any other person. *Toombs v. Driver Mgmt., Inc., supra; Leitz v. Roberts Dairy, supra.*

Zessin testified that on June 22, 1992, during the hours of 7 to 10 a.m., he carried 10-foot lengths of cast iron pipe which weighed, depending on the diameter of the pipe, between 20 and 80 pounds, on up to six flights of scaffolding in hot and humid weather. The trial court relied upon Dr. Windle's testimony that carrying such a load in a repetitive and high-volume fashion exceeded what is normally done in recreational activities. Also, the trial court acknowledged:

> We do not decide cases unaware of the world around us. Certainly the physical stress associated with repeatedly walking 6 flights of scaffolding steps for 2-1/2 to 3 hours is greater than the physical stress of nonemployment life for the great majority of us. But add to that scenario, hoisting an eight foot long, 80 lb., cast iron pipe over a shoulder, or even carrying a 20 lb. pipe fitting on alternating trips, and all but the Arnold Schwarzeneggers of the world have to admit that the physical stress of our routine lawn mowing, golfing or four mornings per week two mile jog do not stress our cardiovascular system to the level associated with the activity described by plaintiff.

We determine that the trial court was not clearly wrong in concluding that this activity constituted an exertion or stress greater than that experienced during the ordinary nonemployment life of Zessin or any other person. Thus, we find that Zessin established that his employment was the legal cause of his injury.

### MEDICAL CAUSATION

While legal causation is established by satisfying the "stress greater than nonemployment life" test, a claimant must still demonstrate medical causation. If it is claimed that an injury was the result of stress or exertion in the employment, medical causation is established by a showing by the preponderance of the evidence that the employment contributed in some material and substantial degree to cause the injury. *Leitz v. Roberts Dairy, supra.* See, also, *Toombs v. Driver Mgmt., Inc., supra.*

In order to establish medical causation, Zessin introduced the deposition testimony of Dr. Windle, the cardiologist who had provided follow-up treatment for Zessin. The following exchange occurred between Dr. Windle and Zessin's attorney:

Q. Doctor, after having reviewed all the medical records and examining Larry Zessin, have you been able to reach an opinion that you can express with a reasonable degree of medical probability, as to whether the activity described to you by Larry Zessin that he was performing on the jobs in the hours immediately preceding the cardiac arrest contributed to a material and substantial degree to the heart attack?

. . . .

A. Yes.

Q. What is that opinion?

[Objection omitted.]

[A.] I think that there is a high degree of probability that there was a — an association between the very heavy exertion which he was undergoing, which stresses the heart both in terms of its ability to consume oxygen, aggravating any circumstances, it was further mitigated [sic] by lifting which increases the aerobic requirements of the heart and the rest of the body, and was temporally associated with his collapse.

The trial court found that Zessin's "very heavy and repetitive physical exertion combined with his preexisting condition to cause the myocardial infarction of June 22, 1992." As previously stated, causation is a factual issue to be determined by the trier of fact, whose determination should not be reversed unless it is clearly erroneous. See *Leitz v. Roberts Dairy*, 237 Neb. 235, 465 N.W.2d 601 (1991).

We hold that the compensation court did not clearly err in finding that the deposition testimony of Dr. Windle, when considered in the context of his entire testimony, establishes medical causation.

The remaining assigned error concerns the liability of Shanahan and Employers for Zessin's medical bills arising from his surgery for a coronary artery bypass and the implantation of an AICD. Shanahan and Employers argue that the bypass surgery and the implantation of the AICD resulted from Zessin's preexisting heart condition. Shanahan and Employers point to Dr. Turk's notation on a surgical report dated July 9, 1992, that "[s]ince the patient has multiple history of syncope

in the past, patient is now undergoing coronary artery bypass graft surgery in addition to implantation of AICD." However, Dr. Turk was not consistent in his characterization of the impetus for the surgery. In a letter to Employers, he stated that "[b]ecause of sudden cardiac death, the patient underwent electrophysiologic evaluation by Dr. Krueger at which time he had an easily-induced ventricular tachycardia. For the treatment of this, patient underwent implantation of an [AICD] and one-vessel coronary artery bypass graft surgery . . . ."

In addition, Dr. Windle testified that "the indications for the defibrillator were his cardiac arrest not his syncopal episodes, that he had what's called an electrophysiology study, albeit abbreviated, that they felt suggested that he was at risk for a recurrence of his cardiac arrest."

As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of witnesses and the weight to be given their testimony. *Leitz v. Roberts Dairy, supra.* It is the role of the compensation court as the trier of fact to determine which, if any, of the expert witnesses to believe. *Surratt v. Watts Trucking,* 249 Neb. 35, 541 N.W.2d 41 (1995). The trial judge found that the implantation of the defibrillator was necessary as a result of Zessin's myocardial infarction of June 22, 1992, which the trial judge had already concluded arose within the scope of Zessin's employment. This determination was not clearly erroneous.

The trial court did not make an explicit finding regarding the bypass surgery, but ordered Shanahan and Employers to pay the bills relating to the bypass procedure. Dr. Windle testified that Zessin's previous minor heart attack was in another area of the heart. Although the trial court did not specify its factual finding regarding bypass surgery, we determine that in finding that Shanahan and Employers should pay, the trial court impliedly found that the bypass procedure was necessary as a result of Zessin's June 22 injury. We conclude that the judge was not clearly wrong in finding that the bypass surgery was necessary as a result of Zessin's June 22 myocardial infarction.

## CONCLUSION

As the findings of fact of the Workers' Compensation Court that Zessin's injury was caused by his employment and arose in

the course of his employment are supported by sufficient evidence in the record and support the award, we affirm the findings of the Workers' Compensation Court.

AFFIRMED.