## Ismael Contreras, appellee, v.
## T.O. Haas, LLC, appellant.

___ N.W.2d ___

Filed August 19, 2014.    No. A-13-673.

1.  **Workers' Compensation: Appeal and Error.** A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award.

2.  ____: ____. In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, an appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong.

3.  ____: ____. Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own decisions.

4.  **Workers' Compensation: Rules of Evidence.** As a general rule, the Nebraska Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence.

5.  **Workers' Compensation: Rules of Evidence: Legislature: Due Process.** Subject to the limits of constitutional due process, the Legislature has granted the compensation court the power to prescribe its own rules of evidence and related procedure.

6.  **Workers' Compensation: Expert Witnesses.** In a workers' compensation case, an expert witness must qualify as an expert and the testimony must assist the trier of fact to understand the evidence or determine a fact in issue.

7.  ____: ____. Expert testimony in a workers' compensation case must be based on a reasonable degree of medical certainty or a reasonable probability.

8.  ____: ____. Although expert medical testimony in workers' compensation cases must be based on a "reasonable degree of medical certainty" or "reasonable probability," the testimony need not be couched in those exact, magic words.

9.  **Workers' Compensation: Proof.** Under the Nebraska Workers' Compensation Act, a claimant is entitled to an award for a work-related injury and disability if the claimant shows, by a preponderance of the evidence, that he or she sustained an injury and disability proximately caused by an accident which arose out of and in the course of the claimant's employment.

10. ____: ____. To recover workers' compensation benefits, an injured worker is required to prove by competent medical testimony a causal connection between the alleged injury, the employment, and the disability.

11. **Workers' Compensation: Expert Witnesses.** The Workers' Compensation Court is entitled to accept the opinion of one expert over another.

12. **Workers' Compensation.** As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony.

Appeal from the Workers' Compensation Court: J. Michael Fitzgerald, Judge. Affirmed.

John W. Iliff, of Gross & Welch, P.C., L.L.O., for appellant.

William V. Steffens and Jeremiah J. Luebbe, of Steffens Law Office, P.C., for appellee.

Irwin and Bishop, Judges.

Per Curiam.

## I. INTRODUCTION

On appeal, T.O. Haas, LLC, asserts that the Workers' Compensation Court erred in admitting certain exhibits into evidence and in finding that Ismael Contreras is permanently and totally disabled. We affirm.

## II. FACTUAL BACKGROUND

In 2006, Contreras was hired by T.O. Haas as a certified tire technician. As a part of Contreras' job, he was required to remove old tires from vehicles, repair tires, and place either new or repaired tires back on the vehicles. On August 23, 2010, Contreras was working at T.O. Haas and was trying to change a tire on a "skid steer." In working with the tire, Contreras turned to his left to lower the tire to the ground when he felt "a sharp pain go through [his] back." Contreras reported the injury to his supervisor.

Contreras attempted to return to work the day after his injury, but was unable to work for even an hour. Contreras has not returned to work at T.O. Haas since the day after he incurred the injury to his back. In fact, other than working part time delivering newspapers for approximately 2 months in 2012, Contreras has not worked anywhere since August 24, 2010.

In September 2010, Contreras made an appointment with his family physician, Dr. Jason Citta, because the pain in his back had not improved since August 23. Dr. Citta pre-scribed Contreras pain medication, ordered an MRI, and referred him to a physical therapist. During the months of September and October, however, Contreras continued to see

Dr. Citta and continued to complain about severe back pain. Dr. Citta referred Contreras to Dr. Burt McKeag for further pain management.

On October 12, 2010, Contreras saw Dr. McKeag. After Dr. McKeag's examination, he noted the following in his report:

> [Contreras] is involved in litigation with workman's compensation. His story and injury are very reasonable, but he does tend to have an exaggerated presentation. I reviewed his MRI and he does have significant NF stenosis at L5/S1 on the left consistent with his symptoms. I feel that it is reasonable to proceed with a [lumbar epidural steroid injection].

Dr. McKeag administered the injection to Contreras on November 16. Contreras reported that he did not receive any significant relief from this injection. As a result of Contreras' reports of continued back pain, Dr. Citta referred him to a neurosurgeon, Dr. Omar Jimenez.

Dr. Jimenez diagnosed Contreras as suffering from "degenerative disc disease at L4-5 and also at L5-S1 with a large herniated disc on the right at L5-S1, which also extends centrally slightly to the left." He recommended that Contreras undergo back surgery. In March 2011, Contreras had back surgery. After the surgery, Contreras reported that he was "having significant right SI joint discomfort." Dr. Jimenez prescribed pain medication, including another injection. In addition, he advised Contreras to continue to attend physical therapy.

In June 2011, approximately 3 months after his surgery, Contreras reported that he was experiencing "excruciating pain lateral to [his] incision up in the hip area." Contreras stated that the pain was "disabling." Dr. Jimenez indicated he was "baffled by his symptoms and would like to proceed with [an] MRI . . . . It is likely that he may be suffering from sacroiliac joint pain, although he states this is better in addition to his trochanter pain." Ultimately, Dr. Jimenez prescribed Contreras additional pain medication and ordered him to be more "aggressive in his recuperation." Dr. Jimenez believed that physical therapy would help Contreras heal. However, Dr. Jimenez also noted that the MRI revealed "evidence of facet

hypertrophy bilaterally at 4-5 and 5-1 . . . which may be an issue that may need to be addressed in the future."

Contreras returned for a followup visit with Dr. Jimenez in August 2011, where he continued to report severe back pain. At this appointment, Dr. Jimenez recommended that Contreras undergo a spinal fusion surgery. After receiving a second opinion about the spinal fusion surgery, Contreras elected not to undergo the procedure.

After his August 2011 appointment with Dr. Jimenez, Contreras returned to the care of Drs. Citta and McKeag. The doctors continued to prescribe pain medication and recommended physical therapy. Contreras continued to report ongoing back pain.

## III. PROCEDURAL BACKGROUND

On December 22, 2010, Contreras filed a petition in the Nebraska Workers' Compensation Court alleging that he had been injured in the scope and course of his employment with T.O. Haas. Contreras requested that, as a result of his injury, he be awarded temporary and permanent disability benefits. He also requested that T.O. Haas be ordered to pay for his medical bills.

On March 1, 2013, a trial was held. At the trial, T.O. Haas stipulated that Contreras injured his back on August 23, 2010, while at work. It also stipulated that the injury to Contreras' back required surgery in March 2011. However, T.O. Haas specifically disputed the extent of Contreras' work restrictions and loss of earning capacity as a result of his back injury.

Contreras testified at trial regarding the accident and his resulting injury. During his testimony, Contreras indicated that he continues to take pain medication for his back on a daily basis. In fact, he testified that he has taken some type of pain medication for his back continuously since August 23, 2010. He also testified that despite this pain medication, he continues to suffer from back pain. He explained that during his testimony, his back was "throbbing and ha[d] a burning sensation." He rated his pain at "a 7 to an 8" on a scale of 1 to 10. Contreras also testified that he has previously been convicted of a felony.

In addition to Contreras' testimony, both parties offered numerous exhibits, including Contreras' medical records from various doctors. Although we have reviewed this voluminous medical evidence in its entirety, we do not detail such evidence here. Rather, we simply note that there was conflicting evidence presented concerning the degree of Contreras' impairment, the cause of Contreras' ongoing back pain after his back surgery, and Contreras' ability to return to any type of employment. We will set forth the specific facts as presented at the trial as necessary in our analysis below.

After the parties' presentation of evidence, the trial court entered an extremely detailed, 11-page order in which it evaluated all of the evidence presented. Ultimately, the court found that Contreras reached maximum medical improvement in September 2011, after he had decided not to undergo the spinal fusion surgery. The court found that prior to September 2011, Contreras was entitled to temporary total disability benefits, and that after September 2011, he continued to be totally disabled and, as such, was entitled to permanent total disability benefits. The court also awarded Contreras compensation for past and future medical expenses.

T.O. Haas appeals from the trial court's order.

## IV. ASSIGNMENTS OF ERROR

On appeal, T.O. Haas assigns the following as errors: (1) The trial court erred by admitting certain exhibits into evidence, (2) the trial court was clearly wrong in awarding permanent total disability when there was insufficient competent and qualified medical evidence to prove a causal connection between Contreras' injury (and injury-related surgery) and postsurgery restrictions, and (3) there was insufficient competent evidence to support an award of permanent total disability.

## V. ANALYSIS

### 1. Standard of Review

[1-3] A judgment, order, or award of the Workers' Compensation Court may be modified, reversed, or set aside only upon the grounds that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or

award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013). In determining whether to affirm, modify, reverse, or set aside a judgment of the Workers' Compensation Court, an appellate court reviews the trial judge's findings of fact, which will not be disturbed unless clearly wrong. *Id.* Regarding questions of law, an appellate court in workers' compensation cases is obligated to make its own decisions. *Id.*

## 2. Admission of Exhibits 22 and 23

On appeal, T.O. Haas alleges that the trial court erred by admitting into evidence portions of exhibit 22, which consists of records from Contreras' physical therapy and a copy of a functional capacity evaluation performed on Contreras, and portions of exhibit 23, which consists of Contreras' medical records from Dr. McKeag. We will address the admissibility of each exhibit; however, first we recount the relevant law that overlays our review of the trial court's determinations regarding the admission of evidence.

[4,5] As a general rule, the Nebraska Workers' Compensation Court is not bound by the usual common-law or statutory rules of evidence. Neb. Rev. Stat. §§ 48-168(1) (Reissue 2010) and 27-1101(4)(d) (Reissue 2008); *Veatch v. American Tool*, 267 Neb. 711, 676 N.W.2d 730 (2004). Subject to the limits of constitutional due process, the Legislature has granted the compensation court the power to prescribe its own rules of evidence and related procedure. § 48-168; *Veatch v. American Tool, supra*.

[6,7] The Nebraska Supreme Court has previously clarified the rules regarding the admissibility of expert testimony in workers' compensation cases. Specifically, the court has stated that in a workers' compensation case, an expert witness must qualify as an expert and the testimony must assist the trier of fact to understand the evidence or determine a fact in issue. *Veatch v. American Tool, supra*. The witness must

have a factual basis for the opinion, and the testimony must be relevant. *Id*. Expert testimony in a workers' compensation case must be based on a reasonable degree of medical certainty or a reasonable probability. *Id*. An expert opinion in a workers' compensation case based on a mere possibility is insufficient, but the standard also does not require absolute certainty. See *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996).

With these rules in mind, we now address T.O. Haas' assertions regarding the trial court's admission of portions of exhibits 22 and 23.

### (a) Exhibit 22

Exhibit 22 consists of Contreras' records from physical therapy, authored by Contreras' physical therapist, Tyler Sexson. In addition, pages 36 through 45 of the exhibit consist of the results of a functional capacity evaluation performed on Contreras. This evaluation was performed by Sexson. The last three pages of the exhibit include Sexson's responses to questions posed by Contreras' counsel concerning the functional capacity evaluation. Sexson's answers indicate his professional opinion that Contreras "provided an accurate p[or]trayal of his current pain and limitations during the [functional capacity evaluation]."

At trial, T.O. Haas objected on the basis of relevance and foundation to the functional capacity evaluation and to Sexson's responses to counsel's questions about that evaluation. In response to T.O. Haas' objection, Contreras asserted that the entire exhibit, including the evaluation and Sexson's responses to the questions, was very relevant to its case: "So it's a critical piece of evidence for our case. And it's certainly very relevant. Why wouldn't the individual who performed the [functional capacity evaluation] in question, . . . Sex[s]on, be able to tell us why he believes the results are accurate?" The trial court overruled T.O. Haas' objections and allowed the exhibit into evidence.

On appeal, T.O. Haas asserts that the trial court erred in admitting pages 36 through 48 of exhibit 22. Specifically, it argues that the results of the functional capacity evaluation

are not valid because there was some indication of symptom magnification. In addition, it argues that Sexson erroneously indicated that his opinion about the validity of the results of the evaluation was given to a medical degree of certainty, even though he is not a medical doctor. T.O. Haas' assertions have no merit.

The results of Contreras' functional capacity evaluation demonstrate Contreras' level of impairment and his ability to perform a variety of movements and tasks in light of his injury. This information is clearly relevant to the trial court's determination about Contreras' disability and his loss of earning capacity. And, although there is some indication that Contreras was exaggerating his symptoms during the evaluation, this does not make the results inadmissible. Rather, this is an issue that T.O. Haas could have, and did, raise at trial. In fact, T.O. Haas offered the report of a different doctor who had evaluated Contreras and who had a very different opinion about Contreras' level of impairment and about the validity of the functional capacity evaluation.

Additionally, although we recognize that in Sexson's responses to counsel's questions he erroneously indicated that he "answer[ed] the . . . questions to a 'medical degree of certainty,'" even though he is not a licensed physician, we do not find that this misstatement equates to all of his answers' being inadmissible. Sexson is a physical therapist who has a great deal of experience in performing functional capacity evaluations. In addition, he has a great deal of experience with Contreras and with Contreras' injury and abilities because he was Contreras' physical therapist off and on for a 2-year period. Sexson is qualified to offer an opinion about whether Contreras was exaggerating his symptoms during the functional capacity evaluation, and such opinion is relevant to the trial court's determination about Contreras' disability and loss of earning capacity.

T.O. Haas' assertions regarding the admissibility of pages 36 through 48 of exhibit 22 are without merit. The exhibit, in its entirety, was properly admitted and considered by the trial court.

### (b) Exhibit 23

Exhibit 23 consists of Contreras' medical records from Dr. McKeag. Such records include Dr. McKeag's notes from Contreras' numerous visits with him from October 2010 through October 2012. Also included in exhibit 23, on page 17, is a copy of the page from Contreras' functional capacity evaluation with Sexson, which includes Sexson's summary of Contreras' physical restrictions and recommendation that Contreras is "unable to return to prior job duties fully within the lightest Sedentary category of Physical Demand." At the bottom of this page is a handwritten note signed by Dr. McKeag. That note states: "I agree with the above recommendations." Additionally, on page 22 of exhibit 23, there is a letter from Contreras' counsel to Dr. McKeag which asks Dr. McKeag to further explain the handwritten note on the functional capacity evaluation. Dr. McKeag responded to this letter by indicating that he did, in fact, "sign off" and agree with the recommendations of the functional capacity evaluation. Dr. McKeag specifically noted, "I do not personally do [functional capacity evaluations]. I do not consider myself to be an expert regarding [functional capacity evaluations]. I read the [functional capacity evaluation] and I basically agree with it, but I don't know what that is worth."

At trial, T.O. Haas objected on the basis of relevancy and foundation to page 17 of exhibit 23, where Dr. McKeag indicated his agreement with the recommendations of the functional capacity evaluation. The trial court overruled the objection, stating, "And there's some doc[tors] that sign off on [functional capacity evaluations], even though the doc[tors] don't do them. They — Overruled. This is — This sounds reasonable to me. [Doctors] can also receive [functional capacity evaluations] and make some contradictory statements or hedge their bets a little bit. Okay." T.O. Haas did not object to page 22 of exhibit 23, which consisted of Dr. McKeag's further explanation of his agreement with the recommendations of the functional capacity evaluation.

On appeal, T.O. Haas argues that the trial court erred in overruling its objection to page 17 of exhibit 23. Specifically, T.O. Haas alleges that this page of the exhibit was not

admissible because Dr. McKeag admitted that he is not an expert regarding functional capacity evaluations, because Dr. McKeag did not indicate that his agreement with the recommendations in the functional capacity evaluation was made within a reasonable degree of medical probability, and because Dr. McKeag's statement does not assist the trial court in any way. T.O. Haas' assertions have no merit.

First, we note that at trial, T.O. Haas did not object to page 22 of exhibit 23, which consisted of Dr. McKeag's further explanation of his agreement with the recommendations of the functional capacity evaluation. This page of the exhibit reiterates that Dr. McKeag "sign[ed] off" on the recommendations of the functional capacity evaluation and that he had written, "I agree with the above recommendations." As such, page 22 contains the same information as page 17. And, page 22 was admitted into evidence without objection. Accordingly, even if the court erred in admitting page 17, such error would clearly be harmless as the same information was included in another, uncontested portion of the same exhibit.

Moreover, we cannot say that the trial court erred in admitting page 17 of exhibit 23 into evidence. Although Dr. McKeag indicated that he is not an expert with regard to functional capacity evaluations, presumably because he does not conduct this type of testing on his patients, he is clearly qualified to provide his opinion with regard to Contreras' physical health and his ability to perform certain tasks. Dr. McKeag, who specializes in pain management, saw Contreras on at least 10 occasions between October 2010 and October 2012. At each of these visits, Dr. McKeag evaluated Contreras' level of back pain, and often, he would evaluate Contreras' ability to perform certain movements in light of the pain.

Given Dr. McKeag's knowledge of Contreras' physical health, his general agreement with the results and recommendations of the functional capacity evaluation certainly provide relevant information to the trial court. Dr. McKeag was given two separate opportunities to contradict the results of the evaluation or, at the very least, to decline to agree with those recommendations. Dr. McKeag did not indicate any disagreement with the recommendations other than to note his lack of

expertise with functional capacity evaluations in general. Such information is associated with the weight of Dr. McKeag's opinion, rather than with its admissibility.

[8] Finally, we note that although expert medical testimony in workers' compensation cases must be based on a "reasonable degree of medical certainty" or "reasonable probability," the testimony need not be couched in those exact, magic words. See *Edmonds v. IBP, inc.*, 239 Neb. 899, 479 N.W.2d 754 (1992). As such, Dr. McKeag's medical opinion is admissible even though he did not explicitly state that it was based on a reasonable degree of medical certainty or reasonable probability. Dr. McKeag's agreement with the recommendations of the functional capacity evaluation must be read in conjunction with his medical expertise and with his experience as Contreras' physician. Although Dr. McKeag noted that he is not an expert in functional capacity evaluations, nowhere in his opinion does he provide any indication that his medical opinion was not based on a reasonable degree of medical certainty or reasonable probability.

T.O. Haas' assertions regarding the admissibility of page 17 of exhibit 23 are without merit. The exhibit, in its entirety, was properly admitted and considered by the trial court.

### 3. Finding of Permanent and Total Disability

In the trial court's order, it concluded that Contreras was permanently and totally disabled as a result of the injury he suffered while at work on August 23, 2010. In coming to this conclusion, the court found that the evidence presented at trial demonstrated that Contreras suffered a low-back injury which required surgery and which continues to cause him pain. The court went on to find that as a result of his injury, Contreras is limited in his ability to perform certain work functions, and that "[a]t best, [he] would be able to perform some light work jobs." The court also found that there are no light work jobs available to Contreras due to the combination of his physical restrictions, his lack of education, and his felony conviction. The trial court awarded Contreras permanent total disability benefits.

On appeal, T.O. Haas alleges that the trial court erred in two ways when it concluded that Contreras was permanently and totally disabled. First, T.O. Haas alleges that there was not competent medical evidence to demonstrate a causal connection between Contreras' back condition after the March 2011 surgery and the August 2010 injury or between his back condition and his physical restrictions as reported in the functional capacity evaluation. Second, T.O. Haas alleges that the only competent medical evidence presented regarding Contreras' physical limitations after surgery demonstrated that Contreras was capable of working and had suffered a loss of earning capacity of 25 percent.

### (a) Causal Connection Between Postsurgery Restrictions and Work Injury

[9,10] Under the Nebraska Workers' Compensation Act, a claimant is entitled to an award for a work-related injury and disability if the claimant shows, by a preponderance of the evidence, that he or she sustained an injury and disability proximately caused by an accident which arose out of and in the course of the claimant's employment. *Schlup v. Auburn Needleworks*, 239 Neb. 854, 479 N.W.2d 440 (1992). Moreover, to recover workers' compensation benefits, an injured worker is required to prove by competent medical testimony a causal connection between the alleged injury, the employment, and the disability. *Owen v. American Hydraulics*, 254 Neb. 685, 578 N.W.2d 57 (1998).

When testing the sufficiency of the evidence to support findings of facts made by the Workers' Compensation Court, the evidence must be considered in the light most favorable to the successful party and the successful party will have the benefit of every inference reasonably deducible from the evidence. *Olivotto v. DeMarco Bros. Co.*, 273 Neb. 672, 732 N.W.2d 354 (2007).

At trial, T.O. Haas stipulated that Contreras injured his back on August 23, 2010, while at work. It also stipulated that Contreras' back injury required surgery in March 2011. As such, at trial and on appeal, T.O. Haas disputes only

the extent of Contreras' condition after the back surgery. T.O. Haas challenges the extent of Contreras' physical restrictions postsurgery and the resulting loss of earning capacity. To state T.O. Haas' argument more simply, it asserts that there is no medical evidence which ties Contreras' reports of ongoing back pain after surgery to the injury he suffered on August 23, 2010, or to his physical restrictions as reported in the functional capacity evaluation.

When we consider the evidence presented at trial in the light most favorable to Contreras, we conclude there is sufficient evidence to demonstrate that Contreras' condition after the March 2011 surgery was causally related to the injury he sustained on August 23, 2010, and that this condition caused physical restrictions, as reflected in the functional capacity evaluation.

On July 29, 2011, approximately 4 months after Contreras' back surgery, Dr. Jimenez reported that Contreras was suffering from a right L5-S1 herniated disk and that Contreras' "present back condition" was caused by the workplace accident that had occurred in August 2010. Dr. Jimenez also reported that Contreras had not yet reached maximum medical improvement for his injury. A few days after Dr. Jimenez reported these facts, he met with Contreras and recommended he "undergo a more aggressive approach" for his back condition. Dr. Jimenez recommended a spinal fusion surgery. This evidence demonstrates that in the months after the March 2011 back surgery, Contreras continued to suffer from a serious back condition that was a direct result of his August 2010 workplace injury.

In addition to the reports of Dr. Jimenez, the medical records of Dr. McKeag also indicate that after the back surgery, Contreras continued to suffer from severe back pain. Physical examinations of Contreras revealed some indication that his back condition and resulting back pain affected his ability to perform certain movements. And, at trial, Contreras testified that the March 2011 back surgery did not resolve his back pain. Contreras stated that after the surgery, he felt relief for only a "brief time." Contreras also testified that he has been on some

type of pain medication continuously since the August 2010 accident and that even with this medication, he continues to feel pain.

All of this evidence, taken together, is sufficient to support the trial court's finding that there was a causal connection between Contreras' condition after the back surgery and his August 2010 workplace accident. In its brief on appeal, T.O. Haas points to evidence in the record which demonstrates that Contreras' postsurgery condition was not a result of his workplace accident and that, in fact, Contreras was exaggerating his continuing pain and inability to perform certain movements. Essentially, T.O. Haas' argument is about the credibility of the various doctors who examined and treated Contreras.

[11,12] We recognize that the trial court was faced with conflicting opinions regarding Contreras' postsurgery condition and the cause of that condition. However, we also recognize that the Workers' Compensation Court is entitled to accept the opinion of one expert over another. See *Zessin v. Shanahan Mechanical & Elec*., 251 Neb. 651, 558 N.W.2d 564 (1997). As the trier of fact, the Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Id*. When the record in a workers' compensation case presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Lowe v. Drivers Mgmt., Inc*., 274 Neb. 732, 743 N.W.2d 82 (2007).

The trial court accepted the opinion of Dr. Jimenez and relied on the medical records authored by Dr. McKeag when it found that Contreras "has had a low back injury which required surgery and continues to have pain. [He] is limited on his ability to perform work functions." Upon our review of the record, we conclude that there was sufficient evidence to support the trial court's findings that Contreras' condition after the March 2011 surgery was causally related to the injury he sustained on August 23, 2010, and that this condition caused physical restrictions, as reflected in the functional capacity evaluation.

(b) Ability to Work

T.O. Haas also asserts that the trial court erred in awarding permanent total disability, because such a finding is only warranted when the injured party is unable to perform any work which he has experience or capacity to perform, "or any other kind of work which a person of his mentality an[d] attainments could do." Brief for appellant at 27-28 (citing *Kleiva v. Paradise Landscapes*, 230 Neb. 234, 430 N.W.2d 550 (1988)). T.O. Haas claims that the only competent evidence regarding Contreras' loss of earning capacity shows that Contreras is capable of working at a medium level of work, and this results in a loss of earning capacity of 20 to 25 percent, not total disability. However, this argument is contradicted by other evidence in the record. For example, the functional capacity evaluation conducted by Sexson reveals that Contreras struggled to perform many movements and had limited strength. Sexson concluded that Contreras was

> unable to function completely within the lightest Physical Demand Category, as defined by the U.S. Dept. of Labor, of occasional lifting 10 lbs., frequent lifting 5 lbs., and constant lifting <5 lbs. He demonstrated deficiencies from normal values in all tested strength and mobility of upper and lower extremities, and trunk. These impairments severely limited his ability to perform material and non-material handling tasks. He was unable to complete a majority of presented tasks due to lower back pain, limiting his trunk and extremity mobility. All material and non-material handling testing elicited pain at the mid to lower back.

After the completion of the functional capacity evaluation, Sexson opined that the evaluation accurately portrayed Contreras' abilities and that Contreras had performed the tests with full participation. In addition, Dr. McKeag indicated his agreement with the restrictions and recommendations of the evaluation.

This evidence demonstrates that even after Contreras' March 2010 surgery, he had considerable physical restrictions as a result of the August 2010 workplace accident. T.O. Haas, however, asserts that this evidence does not prove anything

about Contreras' physical restrictions, because the functional capacity evaluation was invalid as a result of Contreras' exaggeration of symptoms and because Dr. McKeag's agreement with the evaluation should not be considered.

In making its arguments, T.O. Haas reiterates its previous assertions about why this evidence should have been excluded altogether at trial. In our analysis above, we rejected T.O. Haas' arguments and found that both the results of the functional capacity evaluation and Dr. McKeag's agreement with those results were properly admitted and considered by the trial court. As such, T.O. Haas' arguments about the validity of this evidence are without merit.

T.O. Haas also asserts that other medical evidence presented at trial contradicted the findings of the functional capacity evaluation and demonstrated that Contreras was, in fact, exaggerating his symptoms. However, as we stated above, as the trier of fact, the Nebraska Workers' Compensation Court is the sole judge of the credibility of the witnesses and the weight to be given their testimony, and when the record in a workers' compensation case presents conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. See *Lowe v. Drivers Mgmt., Inc.*, 274 Neb. 732, 743 N.W.2d 82 (2007); *Zessin v. Shanahan Mechanical & Elec.*, 251 Neb. 651, 558 N.W.2d 564 (1997).

Based upon the conflicting evidence in the record, the trial court noted in its award: "[Contreras] may not be as limited as set forth in the functional capacity evaluation but may also be limited more than Dr. Gammel finds. At best, [Contreras] would be able to perform some light work jobs." The court went on to conclude that there are no light work jobs available to Contreras, due to the combination of his physical restrictions, his lack of education, and his felony conviction. The trial court awarded Contreras permanent total disability benefits. Although the trial court does not specifically refer to the odd-lot doctrine, the rationale provided by the trial court is consistent with that doctrine.

> Under the odd-lot doctrine, "'"[t]otal disability may be found in the case of workers who, while not altogether incapacitated for work, are so handicapped that

they will not be employed regularly in any well-known branch of the labor market. The essence of the test is the probable dependability with which claimant can sell his services in a competitive labor market, undistorted by such factors as business booms, sympathy of a particular employer or friends, temporary good luck, or the superhuman efforts of the claimant to rise above his crippling handicaps."'"

*Lovelace v. City of Lincoln*, 283 Neb. 12, 14, 809 N.W.2d 505, 507-08 (2012).

Whether Contreras is totally or permanently disabled is a question of fact, and when testing the trial judge's findings of fact, we consider the evidence in the light most favorable to the successful party. Although the trial court's consideration of Contreras' felony conviction (along with his physical impairments and lack of education) is not a consideration found under this state's appellate authority currently, we find it unnecessary to determine whether such a consideration results in error, because (1) no assignment of error or argument was made on this basis and (2) we find there is sufficient evidence in the record to support the Workers' Compensation Court's decision that the employee is totally and permanently disabled based on its determination of the employee's physical limitiations combined with the evidence as to his limited educational background. The combination of those factors alone has been upheld by the Nebraska Supreme Court as a basis for total disability. See *Money v. Tyrrell Flowers*, 275 Neb. 602, 748 N.W.2d 49 (2008) (evidence of employee's significant physical impairments after injury and her limited cognitive abilities was sufficient to support trial judge's finding of permanent and total disability). We find that to be the case here and affirm the trial court's award of permanent total disability.

## VI. CONCLUSION

We find no merit to T.O. Haas' assignments of error. The trial court properly admitted into evidence and considered exhibits 22 and 23. In addition, there was sufficient evidence to support the trial court's conclusion that Contreras is

permanently and totally disabled. Accordingly, we affirm the trial court's order in its entirety.

AFFIRMED.

INBODY, Chief Judge, participating on briefs.